## In re MOUNTAIN STATES POWER CO.
### Nos. 7614–7617, 7619.

Circuit Court of Appeals, Third Circuit.
March 5, 1941.

Wm. H. Foulk, of Wilmington, Del.
(Reuben Satterthwaite, Jr., of Wilmington,

Del., on the brief), for appellants Satterthwaite and Foulk.

George S. Munson, of Philadelphia, Pa. (Townsend, Elliott & Munson, of Philadelphia, Pa., on the brief), for appellants Soliday and Sparling.

J. B. Colahan, of Philadelphia, Pa., for appellants Townsend, Elliott & Munson.

Beverly B. Vedder, of Chicago, Ill. (Pope & Ballard, of Chicago, Ill., on the brief), for appellants Pope & Ballard.

Harris & Bryson, of Eugene, Or., and Marks & McMahan, of Albany, Or., for debtor Mountain States Power Co.

Christopher M. Jenks and Homer Kripke, both of Washington, D. C. (David K. Kadane, of Washington, D. C., on the brief), for Securities and Exchange Commission.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

Following the successful reorganization of the Mountain States Power Company in a proceeding in the District Court for the District of Delaware under Section 77B and its successor Chapter X of the Bankruptcy Act, 11 U.S.C.A. §§ 207, 501 et seq., David S. Soliday, the chairman of the preferred stockholders' committee, John W. Sparling, a member of the committee who also served it as a certified public accountant, Townsend, Elliott & Munson, counsel for the committee, and Satterthwaite and Foulk of Wilmington, and Pope & Ballard of Chicago, counsel for the debtor, with others petitioned the district court to allow them compensation for their services rendered in the proceeding and reimbursement for their necessary expenses incurred in connection therewith. From the order of the district court disposing of their petitions Soliday, Sparling, Townsend, Elliott & Munson, Satterthwaite and Foulk, and Pope & Ballard have taken the separate appeals now before us.

■ Soliday's appeal will be first considered since it involves a different question from those raised by the other appellants. That question is whether Soliday is barred from receiving any compensation for his services in the reorganization proceeding as chairman of the preferred stockholders' committee because of the fact that a firm of security dealers of which he is a member purchased and sold securities involved in the reorganization for its own account while he was acting as a member of the committee and its chairman. The district court found that Soliday rendered substantial services throughout the period of reorganization and the evidence supports this finding. It is clear that Soliday's firm, Hopper, Soliday & Company, did not speculate in the debtor's securities to the extent disclosed in the case of In re Paramount-Publix Corp., D.C., 12 F.Supp. 823. It is equally clear that many of the transactions in question (all of which are tabulated in the District Court's opinion, 35 F.Supp. 307, 310) were entered into by Soliday's firm for its own account as principal with the expectation of a profit in excess of the normal brokerage commission, the amount of the profit being within its control. In the light of these facts the district court denied Soliday compensation and reimbursement of expenses. We are satisfied that in so doing the court acted rightly.

■ When Soliday became a member of the preferred stockholders' committee and its chairman he assumed a fiduciary relationship toward the preferred stockholders whom he and his associates on the committee represented. One who stands in such a relationship may not "become the purchaser of the property which he represents, or any portion of it, though he has done so for a fair price, without fraud, at a public sale." Michoud v. Girod, 4 How. 503, 557, 45 U.S. 503, 557, 11 L.Ed. 1076. See also Magruder v. Drury, 235 U.S. 106, 35 S.Ct. 77, 59 L.Ed. 151. The rule was well stated by Chief Judge Cardozo speaking for the Court of Appeals of New York, in Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 546, 62 A.L.R. 1, as follows: "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. * * * Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd."

■ This rule has been invoked, we think rightly, by the District Court for the Southern District of New York as ground

for denying compensation to members of security-holders' committees who traded in securities involved in corporate reorganizations carried out under Section 77B of the Bankruptcy Act. In re Paramount-Publix Corp., supra; In re Republic Gas Corporation, D.C., 35 F.Supp. 300. That the district court has power to deny compensation under such circumstances is clear. American United Mutual Life Insurance Company v. City of Avon Park, Florida, 311 U.S. 138, 61 S.Ct. 157, 85 L.Ed. ——. The rule to which we have referred has been introduced by the Chandler Act of June 22, 1938, into Chapter X of the Bankruptcy Act (which has superseded Section 77B) as Section 249, 11 U.S.C.A. § 649. The effect of Section 249, however, was merely to make explicit under Chapter X what had been implicit under Section 77B, namely, that one who assumes a fiduciary relationship in connection with a corporate reorganization must conform to the standards of conduct which the law imposes upon fiduciaries. See Otis & Co. v. Insurance Bldg. Corporation, 1 Cir., 110 F.2d 333.

The four remaining appeals raise the question whether the allowances made by the district court to the appellants were so grossly inadequate as to constitute an abuse of discretion on the part of the court. After full consideration of the record we have reached the conclusion that the action of the district court upon these appellants' petitions was in such disregard of right and reason as to amount to an abuse of its discretion. The record discloses that the reorganization of this debtor was highly successful. When its petition for reorganization was filed December 31, 1937 the debtor had outstanding approximately $8,200,000 of First Mortgage Bonds which were about to mature, approximately $7,000,000 due on open account to Standard Gas and Electric Company (which company directly and indirectly owned 80% of the debtor's common stock), $5,300,000 of 7% Cumulative preferred stock with arrearages of unpaid dividends amounting to $1,900,000, and 142,500 shares of common stock. The $7,000,000 open account due the Standard Gas and Electric Company presented the principal problem in the reorganization. The elimination of this debt, while relatively unimportant to the first mortgage bondholders, was obviously of vital importance to the preferred stockholders and to the debtor. After lengthy investigations, a series of negotiations continuing over a period of more than two years, and many hearings before the Securities and Exchange Commission, a plan of reorganization was agreed upon under which the $7,000,000 open account was eliminated. In addition the first mortgage bonds bearing interest at rates of 5% and 6% were paid off with the proceeds of $7,500,000 of new 4¼% bonds and $600,000 of new 3% notes and the arrears of dividends on the preferred stock were eliminated. During the reorganization the market value of the preferred stock rose from 15 to 91 and since its consummation full cumulative dividends have been paid on that stock as well as dividends on the common stock. This highly successful result was achieved largely through the efforts of the members of the preferred stockholders' committee, the counsel for that committee and the Wilmington and Chicago counsel for the debtor. In the light of the reorganized company's conceded ability to pay the allowances requested the success of the reorganization makes improper the sort of drastic reduction in compensation allowances to those responsible for the outcome which might have been appropriate under other circumstances.

■ Appellant Sparling is a certified public accountant of Seattle, Washington. He was requested by Soliday to become a member of the preferred stockholders' committee, which was permitted by the district court to intervene in the proceeding by order entered January 28, 1938. He participated in the activities of the committee and in addition was requested by the committee to make a complete investigation of the books and records of the debtor relating to the transactions between it and the Standard Gas & Electric Company in connection with the determination of the status of the $7,000,000 open account between them. His services covered a period of more than two years. He requested an allowance of $7,500 as compensation for his services as an accountant, $3,000 as a member of the committee and reimbursement of out-of-pocket expenses amounting to $1,402.72. It is clear that Sparling made a substantial contribution to the successful result achieved in this proceeding. Nevertheless the district court allowed him only $1,000 as compensation and nothing to reimburse him for his expenses. He was thus left actually out of pocket to the extent of $402.72. This was a plain abuse of discretion under the circumstances here present. We think that Sparling should be al-

lowed $7,000 for his services in both capacities, together with reimbursement for his expenses of $1,402.72.

▊▊▊ Appellants Townsend, Elliott & Munson, Satterthwaite and Foulk, and Pope & Ballard were counsel in the proceeding, the former for the preferred stockholders' committee and the two latter firms for the debtor. Their services, likewise extending over more than two years, were important and valuable, contributing largely to the highly satisfactory result which was achieved. During the course of the proceeding a number of separate plans of reorganization and amendments thereto were proposed by various parties in interest. Due to the fact that the debtor was a subsidiary company of a public utility holding company it was necessary under the provisions of Section 11 of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k, for all these plans to be submitted to the Securities and Exchange Commission for its approval before their submission to the district court. Consequently the appellants' services were largely performed before the Commission in considering and formulating proposed plans and amendments thereto, in conferring with other parties in interest and the staff of the Commission regarding them and in preparing for and participating in hearings before the Commission called to consider them. The fact that a comparatively small part of appellants' services were rendered in the district court may well account for the apparent failure of the court fully to recognize their character and extent.

As compensation for their services, Townsend, Elliott and Munson requested $30,000, Satterthwaite and Foulk $45,000, and Pope & Ballard $40,000. The district court awarded them $10,000, $15,000 and $10,000 respectively. In Newman v. Ambassador Apartments, 101 F.2d 307, 308, we pointed out that the factors to be considered in determining the amount of such allowances include "the extent of the services contributed, the experience and skill required and exercised, the benefit resulting therefrom to the debtor and its security-holders, the size of the debtor and the consequent responsibility undertaken, and the ability of the debtor to pay." The extent of the appellants' services in this proceeding has already been referred to. Their experience and skill in corporate reorganization matters is not questioned. The reorganization of this debtor clearly required such experience and skill and the highly beneficial result to the debtor and its securityholders attests its exercise. The book value of the assets of the debtor was approximately $22,000,000. Upon its reorganization it had ample funds to meet the allowances requested and has in fact set up a reserve sufficient to pay them in full. In the light of all these facts, none of which calls for a denial of adequate compensation, we think that the compensation awarded to these appellants is unjustly and unreasonably low.

It is doubtless true, as suggested by the district court, that there was some duplication of labor by these three appellants. It is likewise true that the success of the reorganization is in part due to the favorable decision which was rendered by the Supreme Court on February 27, 1939 in the case of Taylor v. Standard Gas & Electric Co., 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669. Consequently some reduction in the amounts requested is proper. But these considerations do not justify the drastic reductions made by the district court. Nor do we find justification for its conclusion that the services rendered by Townsend, Elliott & Munson and Pope & Ballard were of exactly equal value. On the contrary the services rendered by each of the three firms differed both in nature and extent. After consideration of the record we conclude that there should be allowed as compensation to Townsend, Elliott & Munson $20,000, to Satterthwaite and Foulk $30,000, and to Pope & Ballard $25,000, together, in the case of each, with reimbursement for expenses actually incurred in connection with the proceeding.

The order of the district court is modified to the extent hereinabove indicated. As so modified it is affirmed.