### In re COSGROVE–MEEHAN COAL CORPORATION et al.

### Appeal of ANGLAND.

### No. 8170.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 6, 1943.

Decided May 24, 1943.

As Amended on Denial of Rehearing
June 17, 1943.

George O. Philips, of Philadelphia, Pa. (McDevitt, Philips & Watters, of Philadelphia, Pa., on the brief), for appellant.

Wm. H. Foulk, of Wilmington, Del., and W. Crosby Roper, Jr., of Philadelphia, Pa., for Securities and Exchange Commission.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

In a proceeding under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, for the reorganization of Cosgrove-Meehan Coal Corporation, debtor (subsequently expressly made subject to the provisions of Chapter X, 11 U.S.C.A. § 501 et seq., by court order), the District Court denied two separate applications of one Maurice P. Angland for allowances of compensation for services said to have been beneficial to the reorganization. On Angland's petition we granted him leave to appeal from the order below.

The one application covers services performed by the claimant as a member of a committee of the debtor's bondholders which committee functioned both prior to and during the reorganization proceeding. The other application is for services performed prior to the reorganization proceeding, while the claimant was acting as the agent or trustee of the debtor corporation in salvaging properties of an Illinois corporation, then in bankruptcy, which was owned by the debtor. The interest in the Illinois corporation constituted approximately eighty per cent of the debtor's total assets. It is the claimant's theory, and testimony was offered to prove, that the salvaging of the properties of the Illinois corporation was a prerequisite to and in anticipation of the reorganization of the debtor.

While serving in the capacities above indicated, Angland was also a member of an investment firm (later incorporated) which at times hereinafter to be designated dealt in bonds of the debtor corporation. Also certain of like bonds which he had pledged as security for a liability upon a note were sold by the pledgee during the reorganization proceeding without application to the court (having charge of the reorganization) for its approval. It is only fair to

mention that, at the time of this sale, the Chandler Act had not been enacted. However, the reorganization proceeding was later subjected to the provisions of Chapter X.

The questions presented are (1) whether the dealings by Angland or his investment firm in bonds of the debtor corporation brought him within the disqualifications imposed by Section 249 of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 649, with respect to his claims for allowances in the reorganization proceeding, and (2) whether he is entitled in that proceeding to an allowance of compensation for services performed by him in salvaging property of the debtor prior to the bankruptcy, which ultimately constituted the major part of the debtor's assets dealt with in the reorganization proceeding.

Angland became a member of the committee of the debtor's bondholders about the middle of 1935. He was then the owner of a one-third interest in about one hundred of the debtor's bonds, his interest therein having been pledged by him to secure a loan upon which he was personally liable to the extent of one-third of the principal thereof. He also owned a fifty per cent interest in and was the active manager of Angland & Co., a partnership, which was engaged in the securities business. In January 1936 this partnership was succeeded by a corporation (Angland & Company, Inc.), wherein Angland owned a fifty per cent stock interest and whereof he was likewise the active manager. Between June 1935 and July 1936 the firm of Angland & Co. or its successor corporation executed orders for the sale of one hundred twenty of the debtor's bonds for customers and a few of such bonds from the firm's inventory. The debtor's petition for reorganization under Section 77B was filed June 22, 1937.

In October 1937 Angland & Company, Inc., went into receivership, and in January 1938 the bank loan for which Angland was personally obligated was called and his one-third interest in the one hundred bonds of the debtor, pledged as security for the loan, was sold by the pledgee. The sale appears to have been necessary. At that time, a drop of an additional point in the market value of the bonds would have rendered the collateral insufficient to liquidate the loan. Angland was then a member of the bondholders' committee, as he had continued to be since the middle of 1935.

In May 1936, more than a year prior to the filing of the petition for reorganization, the debtor appropriated $2,500 to be used by the nominee of one Farley, Angland's attorney, to acquire in the debtor's behalf title to the properties of its Illinois subsidiary in bankruptcy, freed from numerous encumbrances to which they were then subject. Farley nominated Angland for the work. Between May 1936 and March 1937 Angland performed extensive services, more particularly specified in his claim for compensation, which produced for the debtor corporation properties of substantial value.

■ The District Court denied both of Angland's claims on the ground that he was disqualified as a claimant for compensation in the reorganization proceeding because of Section 249 of Chapter X. So far as the claim for compensation as a member of the bondholders' committee is concerned, we think the ruling of the court below was unquestionably correct. While it is true, as Angland urges, that the last of the voluntary transactions by him or his firm in bonds of the debtor corporation occurred almost a year prior to the institution of the reorganization proceeding, he was none the less a member of the bondholders' committee when those transactions took place and it is in his capacity as a member of the same committee that he now claims compensation in the reorganization proceeding. He makes no attempt to sever his services as a committee member prior to the reorganization proceeding from the services performed by him in like capacity after the institution of that proceeding. Nor can we perceive how he could make any such severance. The character of his fiduciary relation as a committee member was a continuing status of identic quality throughout, regardless of when the reorganization proceeding was instituted. Angland's claim for compensation as a committee member therefore falls within the disqualifying specifications of Section 249. Cf. In re Reynolds Investing Co., Inc., 3 Cir., 130 F.2d 60.

Moreover, the sale of Angland's interest in the one hundred bonds of the debtor corporation by the pledgee thereof in January 1938 was alone sufficient to disqualify him as a committee-member claimant for compensation in the reorganization proceeding. It is not only voluntary purchases or sales of a debtor's securities to which Section 249 applies. It denies compensation as

well to any person acting in a reorganization proceeding in a representative or fiduciary capacity *for whose account* claims against or securities of the debtor have been purchased or sold without the prior consent or subsequent approval of the judge in the reorganization proceeding. The bona fides of such purchases or sales is not material under Section 249. See In re Reynolds Investing Company, supra, 130 F.2d at page 62. True enough, Section 249 was not in force when Angland's pledgee sold the pledged bonds in January of 1938, but the proceeding was later made subject to Chapter X by express order of the court and the matter has since been treated with by all parties on the basis that Chapter X is applicable to the proceeding. When Chapter X became pertinent, Angland could then have applied for the court's approval of his own or his pledgee's antecedent sales of bonds of the debtor.

■ If the claim for compensation for services performed by Angland as the debtor's agent or trustee for the salvaging of its property prior to bankruptcy may competently be considered as a charge against the reorganization proceeding, the provisions of Section 249 are likewise fatal to its allowance. But, in the view we take, that claim is in no sense a reorganization claim. Cf. In re Ulen & Co., 2 Cir., 130 F.2d 303, 305. The service was undertaken and completed, as it was intended so to be, prior to the institution of the reorganization proceeding. It was a claim against the debtor's property like that of any other creditor except that it carried with it an equity entitling it to consideration for priority of payment out of the fund which the services claimed for had produced. But such claims, like the claims of all other creditors, are matter for appropriate treatment in the plan of reorganization where claims against the debtor are recognized and dealt with according to their grade.

■ While the time for proving claims against the debtor's estate has passed, we think that the applicant's showing as to the character, extent and value of his service in salvaging the debtor's property prior to bankruptcy is such as to entitle him to apply for a reopening of the proceeding in order that the merit of his claim may be considered and passed upon. Cf. Mohonk Realty Corporation v. Wise Shoe Stores, Inc., 2 Cir., 111 F.2d 287, 288, 289, certiorari denied 311 U.S. 654, 61 S.Ct. 47, 85 L.Ed. 418. In so saying, we intend neither implication nor suggestion with respect to the merit or timeliness of such an application or the claim to which it refers, which remain matters for the independent judgment of the District Court according as the facts and the law may warrant. Not being a claim for services in connection with the reorganization proceeding, it is not subject to the conclusive barrier raised by Section 249 of Chapter X of the Bankruptcy Act. However, it is none the less subject to scrutiny on the basis of the equitable principle that one who acts in a fiduciary capacity may not deal with the subject matter of his trust so as to bring his own personal interest into conflict with his duty to his beneficiaries. Michoud et al. v. Girod et al., 45 U.S. 503, 4 How. 503, 555-557, 11 L.Ed. 1076; see also In re Mountain States Power Company, 3 Cir., 118 F.2d 405, 407, and cases there cited. Whether Angland's sale of bonds of the debtor corporation while he was acting as the debtor's agent or trustee for the salvaging of its property prior to its bankruptcy created, either actually or impliedly, a conflict between his personal interest and his fiduciary obligations is for the trial court to determine preliminarily. Short of the conclusive inhibition of Section 249, it is to such a determination that the equitable principle to which we have referred may become germane.

To the extent that the order of the District Court denied the applicant's claim for compensation for his services in salvaging the debtor's property prior to bankruptcy on the ground that the claim was barred by Section 249 as one arising out of a reorganization proceeding, the order is reversed and the cause is remanded for the purpose of permitting the claimant to apply to the District Court for a reopening of the proceeding, if in the opinion of the District Court such action is warranted, in order that that claim may be considered and passed upon as a claim against the debtor's estate in bankruptcy.

So ordered.