In re NORWALK TIRE & RUBBER CO.

No. 23499.

United States District Court
D. Connecticut.

Jan. 26, 1951.

William B. Gumbart and Gumbart, Corbin, Tyler & Cooper, all of New Haven, Conn., for trustee.

Warren A. Schenck, New York City, and Cummings & Lockwood, of Stamford, Conn., for debtor.

Sage, Gray, Todd & Sims, of New York City, and Pullman & Comley, of Bridgeport, Conn., for indenture trustee.

Hodges, Reavis, Pantaleoni & Downey, of New York City, and J. Stephen Knight, of New Haven, Conn., for Gleason Debenture Holders Committee.

Nordlinger, Riegelman and Benetar, of New York City, and Pouzzner, Hadden, Kopkind & Hadden, of New Haven, Conn., for Frank Debenture Holders Committee.

George Zolotar, of New York City, and Arthur A. Burck, New York City, of counsel, for Securities and Exchange Commission.

HINCKS, Chief Judge.

For fourteen months the trustee has given full time to the task. During the period of "full-time" activity due to the multiplicity and urgency of the problems which confronted him, many of which were currently brought to my attention, the trustee averaged a working day of substantially longer working hours and of more intensive and exhausting effort than is usually required of the chief executive officer of an industrial enterprise of comparable dimensions in full gear of operation. In addition to operating problems, the proper determination of which required extensive research and analysis, the trustee had a task in respect of the reorganization which involved an infinite amount of detail. This I find not only from his own testimony, which is without contradiction in the record, but also on the entire record and my numerous contacts with the attorneys for the trustee which I have had from the time the trustee was appointed.

The Security and Exchange Commission appraised his services for the period of "full time" activity at $1,666 per month. This appraisal, however, was made before hearing the trustee's testimony of the long hours required and devoted to the task:— the subject matter was not fully developed in all its detail in his petition for allowance. True, at the hearing counsel for

the Commission recognized that *"there were periods* during the hectic days of this reorganization that he spent a good deal more than a full working day." However, this statement which was made in answer to a question of my own at the hearing by no means goes so far as to show that the recommendation of the Commission previously formulated had fully taken into account the exhausting demand made upon the trustee's time over a prolonged period.

And so, upon the several factors upon which the recommendation of the Commission is based and taking into account the facts as to the unusual amount of time which the trustee devoted to the task, I come to the conclusion that the compensation of the trustee for the fourteen months of his full-time activity should be $2,000 per month. Adding to this the allowance, as recommended by the Commission, of $833 per month for the three months of half-time activity of the trustee, I allow him $30,500 as constituting reasonable compensation, against which $18,000 heretofore paid as interim allowance will be credited. He is also allowed his disbursements in the amount of $42.50.

### The Other Allowances

In all other respects the recommendations of the Commission both as to compensation for services and as to reimbursement of expenses are accepted. These recommendations were supported by a considered statement made in behalf of the Commission by its counsel, the transcript of which I have carefully reviewed. The recommendations were made known to those affected thereby in advance of the hearing and all have been fully heard. Consistent with the doctrine of Finn v. Childs Co., 2 Cir., 181 F.2d 431, I have no solid ground for rejecting or modifying the recommendations and it will serve no useful purpose for me to comment or elaborate upon the statement made in support thereof. I greatly appreciate the helpfulness and the cooperative attitude of the parties and their counsel throughout the proceedings. But I see no justification for making a greater aggregate charge against the property than that recommended by the Commission nor have I any confidence that I could improve upon the fairness of the suggested distribution of the aggregate considered available.

█ I must sustain also the recommendation of the Commission that, because of dealings by his principal in securities of the debtor while the reorganization proceedings were in progress, the Secretary of the Gleason debenture-holders committee be allowed nothing for his services or for the reimbursement of his expenses. This is indeed a drastic ruling in view of the fact that books of the principal show only four transactions comprising sales and purchases on its own account. These transactions involved in the aggregate less than $10,000 in face value of the debtor's debentures and resulted in a nominal profit to the principal of not over $65. In fact, these transactions were accomplished only for the convenience of principal's customers, the record thereof having been entered in the principal's name only by the inadvertence of a clerk notwithstanding strict instructions that no transactions should be handled for the principal. As agent the principal had handled only eleven such transactions aggregating only $23,000 in face amount, receiving commissions of only one-half point. Under these circumstances my personal inclination would be to avert a real hardship by accepting the suggestion of counsel that these inadvertences should be disregarded under the doctrine of "deminimis". However, counsel cites no case to support such a disposition; the language of Sec. 249, Chapter X, of the Act 11 U.S.C.A. § 649, leaves no room for judicial discretion in such a situation; and the commentators and courts are all agreed that the Act should be given rigid application. Collier on Bankruptcy, 14th Ed., Vol. 6, Pg. 4584 et seq.; Otis & Co. v. Insurance Bldg. Corp., 1 Cir., 110 F.2d 333; In re Mountain States Power Co., D.C., 35 F.Supp. 307, affirmed 3 Cir., 118 F.2d 405. See also In re Cosgrove-Meehan Coal Corp., 3 Cir., 136 F.2d 3, and In re Reynolds Investing Co., 3 Cir., 130 F.2d 60. I must therefore, take care not to let the hardship of this case lead me into a ruling at variance with law. And, after all, the hardship, though in this case real,

can scarcely be deemed unjust when one considers that all those who volunteer their assistance in the expectation of compensation under the Act must be deemed to do so subject to the rigid conditions which the Act imposes.